IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

| | |
|---|---|
| **BRYANT LENOIR,** | **PLAINTIFF** |
| Vs. | No. 4:22cv130-GHD-JMV |
| **GRENADA RAILROAD, LLC;** | **JURY DEMANDED** |
| **AMERICAN RAIL PARTNERS, LLC;** | |
| **RAILUSA, LLC; MACQUARIE** | |
| **INFRASTRUCTURE PARTNERS V GP, LLC;** | |
| **MIP INFRASTRUCTURE PARTNERS V, LP;** | |
| **MIP V RAIL, LLC; and TRACY PEGRAM;** | **DEFENDANTS** |

**COMPLAINT**
**(Trial by Jury Demanded)**

**COMES NOW** your Plaintiff, Bryant Lenoir, by and through his counsel and pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 *et sq.* (hereinafter "FELA"), and common law negligence, and files this Complaint against Defendants, Grenada Railroad, LLC; American Rail Partners, LLC; RailUSA, LLC; Macquarie Infrastructure Partners V GP, LLC; MIP Infrastructure Partners V, LP; MIP V Rail, LLC; and Tracy Pegram; and in support thereof respectfully charges and avers as follows:

**I.**

**THE PARTIES**

1. At all times herein mentioned, Plaintiff Bryant Lenoir (hereinafter referred to as "Lenoir") respectfully alleges that he is an adult resident citizen of Memphis, Shelby County, Tennessee.

1

2. Upon information and belief, Plaintiff alleges that at all times herein mentioned, Defendant, Grenada Railroad, LLC, (hereinafter referred to as "Grenada") was an Illinois incorporated for-profit corporation, with its principal place of business located at 643 First Street Grenada, Mississippi, 38901, and its business office located at 1515 South Federal Highway, Suite 404, Boca Raton, Florida, 33432, and was authorized to do and doing business in the State of Mississippi.

3. Plaintiff alleges that Grenada may be served by delivering a copy of the Summons and Complaint to its registered agent for service of process, C.T. Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi, 39232.

4 Upon information and belief, Plaintiff alleges that at all material times herein, Defendant, American Rail Partners, LLC (hereinafter referred to as "ARP"), was a Delaware for-profit limited liability company and was the parent company of RailUSA, LLC and was authorized and doing business in the State of Mississippi.

5. Plaintiff alleges that ARP may be served by delivering a copy of the Summons and Complaint to its registered agent for service of process, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

6. Upon information and belief, Plaintiff alleges that at all material times herein, Defendant, RailUSA, LLC (hereinafter referred to as "RailUSA"), was a subsidiary of ARP and a Delaware corporation, with its headquarters located at 1515 S. Federal Highway, Suite 404, Boca Raton, Florida, 33432, and was authorized to do and doing business in the State of Mississippi.

7. Plaintiff alleges that RailUSA may be served by delivering a copy of the Summons and Complaint to its registered agent for service of process, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

8. Upon information and belief, Plaintiff alleges that at all material times herein, Defendant, Macquarie Infrastructure Partners V GP, LLC (hereinafter referred to as "Macquarie"), was a Delaware for-profit limited liability company headquartered in New York at Level 15, 125 West 55th Street, New York, New York, 10019, and was authorized to do and doing business in Mississippi.

9. Plaintiff alleges that Macquarie may be served by delivering a copy of the Summons and Complaint to its registered agent for service of process, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801.

10. Upon information and belief, Plaintiff alleges that at all material times herein, Defendant, MIP Infrastructure Partners V, LP (hereinafter referred to as "MIPIP"), was a Delaware for-profit limited partnership that is wholly-owned by Macquarie and is headquartered in New York at Level 8, 15-23 Ground 125 West 55th Street, New York, New York, 10019, and was authorized to do and doing business in Mississippi.

11. Plaintiff alleges that MIPIP may be served by delivering a copy of the Summons and Complaint to its General Partner, Macquarie at the General Partner's registered agent for service of process, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801.

12. Upon information and belief, Plaintiff alleges that at all material times herein, Defendant, MIP V Rail, LLC (hereinafter referred to as "MIP"), was a Delaware for-profit limited liability company that is wholly-owned by MPIP and is headquartered in New York at Level 8, 15-23 Ground 125 West 55th Street, New York, New York, 10019, and was authorized to do and doing business in Mississippi.

13. Plaintiff alleges that MIP may be served by delivering a copy of the Summons and

Complaint to its registered agent for service of process, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801.

14. Defendant, Tracy Pegram, is a resident citizen of Eupora, Mississippi, residing at 60 Depot Road, Eupora, Mississippi, 39744.

## II.

### JURISDICTION AND VENUE

15. Plaintiff incorporates by reference the allegations contained in the above paragraphs as if set forth fully herein.

16. The Court has jurisdiction over this matter and Defendants pursuant to 45 U.S.C. § 51 *et seq.*, commonly referred to as the Federal Employers' Liability Act, and 28 U.S.C. § 1331.

17. This Court can also exercise supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's state law claims because they are derived from the same nucleus of operating facts as the federal law claim such that Plaintiff would ordinarily expect to try them in one proceeding.

18. Venue is proper in this judicial district under 45 U.S.C. § 56 and 28 U.S.C. 1391 because Defendants transact business, committed an illegal and/or tortious act, have an agent, and/or are found in this district, and because a substantial part of the events described herein occurred in this district.

19. Venue is proper in this judicial district under 45 U.S.C. § 56 and 28 U.S.C. 1391 because the incident occurred on Grenada's main rail line in this Court's district on August 27, 2019.

## III.

### BACKGROUND

20. Plaintiff incorporates by reference the allegations contained in the above paragraphs

as if set forth fully herein.

21. On August 27, 2019, during the course and scope of his employment, Bryant Lenoir was ordered and instructed by Defendant, Tracy Pegram, roadmaster for Defendant, Grenada, to utilize a pipe rather than a lining bar to use in a track jack to raise the track to insert additional ballast underneath the track section on a bridge. Because the pipe was too short and was not designed to be used in the track jack, the pipe malfunctioned during the process of lifting up the track, striking Plaintiff in the face and causing serious bodily injury and permanent disfiguring damage.

### IV.

### FEDERAL EMPLOYERS' LIABLITY ACT, 45 U.S.C. § 51 *et seq.* AND COMMON LAW NEGLIGENCE

22. Plaintiff incorporates by reference the allegations contained in the above paragraphs as if set forth fully herein.

23. Plaintiff brings this action under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq*. This action is timely commenced within the meaning of 45 U.S.C. § 56.

24. At all times herein mentioned, the answering Defendant was a rail carrier.

25. At all times herein mentioned, the answering Defendant engaged in interstate commerce and was operating an interstate system of railroads and rail terminals in Mississippi, Tennessee, Florida, and Georgia.

26. At all times mentioned herein, the answering Defendant shipped goods using connections with rail partners.

27. At all times mentioned herein, the answering Defendant performed a full menu of rail operations and those operations ancillary to rail transportation.

28. At all times mentioned herein, the answering Defendant performed work

rehabilitating, repairing, and replacing the substructure of the bridges and replacing caps, stringers, ballast guards, ties, pilings, and cross bracing.

29. At all times mentioned herein, the answering Defendant upgraded a total of seventeen (17) bridges to address safety issues and to allow cars weighing up to 286,00 pounds to operate over them.

30. At all times mentioned herein, the answering Defendant leased and was responsible for repairing and maintaining 228 miles of railroad track running north/south along the U.S. Interstate 55 corridor between Canton, Mississippi, and Memphis, Tennessee.

31. At all times mentioned herein, the answering Defendant was responsible for all track improvements, track remediation, and improvements to track structure.

32. At all times mentioned herein, the answering Defendant actively managed and united the railroad and its contractors into an organized system.

33. At all times mentioned, the answering Defendant was a common carrier.

34. At all times mentioned, the answering Defendant had "contract carrier" and/or "common carrier" authority.

35. At all times mentioned, the answering Defendant was performing as part of a system of interstate rail transportation by virtue of common ownership between itself and a railroad or by a contractual relationship with a railroad.

36. At all times herein mentioned, the answering Defendant was and still is holding itself out to the public for hire.

37. At all times herein mentioned, the answering Defendant was and still is willing to furnish a broad range of rail operations including daily interchanges, storage spots, and fast turn-times.

38. On August 27, 2019, Plaintiff, Bryant Lenoir, was a shared employee of the answering Defendant and AMS Services, LLC headquartered in Nesbit, Mississippi, as a track maintainer/laborer.

39. On August 27, 2019, the answering Defendant hired AMS Services, LLC to completely rebuild and/or rehabilitate a steel girder bridge south of Grenada and milepost 622.5.

40. On August 27, 2019, the answering Defendant, alone with its employee, agent and the answering Defendant's roadmaster, Tracy Pegram, were under tremendous stress and pressure to complete the subject bridge rehabilitation project so that the track could be tested with a locomotive engine.

41. On August 27, 2019, additional ballast needed to be added to the track on the subject bridge so that the track could be tested by the locomotive engine.

42. On August 27, 2019, the answering Defendant's roadmaster, Tracy Pegram, instructed and ordered Plaintiff to use a track jack to raise the track so that additional ballast material could be placed underneath the answering Defendant's track. Plaintiff advised Tracy Pegram that there was no lining bar at this location on the track to place in the track jack to raise the track, it was too dangerous to use a pipe, and he needed a lining bar.

43. On August 27, 2019, the answering Defendant's roadmaster, Tracy Pegram, ignored Plaintiff's request and again instructed and ordered Plaintiff to use a small section of pipe in place of the lining bar to insert into the track jack to raise the track.

44. Plaintiff again questioned the answering Defendant's roadmaster, Tracy Pegram, whether the pipe was long enough and could hold the pressure of the entire section of track while raised up. Tracy Pegram again ordered Plaintiff to utilize the section of pipe to raise the hydraulic track jack and the track due to the fact that the track had to be tested right away.

45. Plaintiff followed the orders and instructions of the answering Defendant's roadmaster, Tracy Pegram, and during the raising of the track, the short section of pipe malfunctioned, causing it to kick up and strike Plaintiff in the face and mouth and causing serious bodily injury and permanent damage.

46. After Plaintiff was struck by the pipe, the answering Defendant's roadmaster, Tracy Pegram, intentionally threw the pipe over the bridge in order to conceal the fact that Plaintiff had utilized the pipe to try and raise the track jack instead of a lining bar.

47. At all times mentioned herein, Tracy Pegram was acting in the course and scope of his employment with the answering Defendant and therefore the answering Defendant is vicariously liable for all common law negligent actions and/or omissions of Tracy Pegram pursuant to the common law actions of agency, *respondeat superior*, and master/servant.

48. At all times mentioned herein, Plaintiff, Bryant Lenoir, was engaged in the course and scope of his duties as a track maintainer/laborer as an employee of the answering Defendant.

49. At all times herein mentioned, Plaintiff received his direction in his employment from the answering Defendant.

50. At all times herein mentioned, the answering Defendant controlled Plaintiff in the performance of his job.

51. At all times herein mentioned, the answering Defendant had the right to control Plaintiff.

52. That on August 27, 2019, at the time of the incident described herein, Plaintiff was an employee of the answering Defendant for purposes of FELA jurisdiction.

53. At all times herein mentioned, it was the answering Defendant's duty to use ordinary care in furnishing Plaintiff with a safe place to work.

54. That on August 27, 2019, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly failed to provide Plaintiff with a safe place to work.

55. That on August 27, 2019, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly failed to equip, guard, maintain, control, conduct and/or supervise the job site so as to provide a reasonable and adequate protection for the health and safety of Plaintiff and its workers/and or employees working on the track.

56. That on August 27, 2019, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly supervised the job site at the section of the track where Plaintiff was attempting to raise the track so that additional ballast could be laid down.

57. That on August 27, 2019, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly failed to provide Plaintiff with adequate training.

58. That on August 27, 2019, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly failed to provide Plaintiff with adequate re-training.

59. That on August 27, 2019, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly failed to provide to Plaintiff the proper equipment in order to lift the track so that additional ballast could be installed under the track.

60. That on August 27, 2019, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly failed to maintain the track lifting appliances and track jack handle in proper and safe working order.

61. That on August 27, 2019, in violation of the answering Defendant's duty, the answering defendant negligently and carelessly allowed improper and unsafe lifting appliances and

handles to exist at the subject rail job site.

62. That on August 27, 2019, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly allowed the track lifting appliances including the track jack and handles to become defective.

63. That on August 27, 2019, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly failed to inspect the track lifting appliances including the track jack and handles.

64. That on August 27, 2010, in violation of the answering Defendant's duty, the answering Defendant negligently and carelessly allowed improper construction of the track lifting appliances including the track jack and handle.

65. At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant failed to provide adequate railroad track lifting appliances and machines for lifting the subject track to install ballast material.

66. At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant failed to reasonably anticipate that Plaintiff could sustain physical injuries by reason of the unsafe and dangerous condition that existed.

67. At all times herein mentioned, in violation of the answering Defendant's duty, the answering Defendant failed to remedy any unsafe conditions, all of which answering Defendant had due notice or, by reasonable inspection thereof, should have had due notice.

68. That on August 27, 2019, the answering Defendant's failure to provide Plaintiff with a safe place to work by one or more of the aforementioned negligent acts and/or omissions caused Plaintiff's injuries and damages to be set forth in more particularity below.

69. That on August 27, 2019, Plaintiff, Bryant Lenoir, was under the control of the

answering Defendant.

70. That on or about August 27, 2019, Plaintiff Bryant Lenoir was under the dominion of the answering Defendant.

71. That on August 27, 2019, Plaintiff, Bryant Lenoir, was a servant of the answering Defendant.

72. That on August 27, 2019, Plaintiff, Bryant Lenoir, performed tasks which directly benefited the answering Defendant.

## V.

### SUCCESSOR LIABLITY – MACQUARIE, MIPIP, AND MIP

73. Plaintiff incorporates by reference the allegations contained in the above paragraphs as if set forth fully herein.

74. Upon information and belief, Defendants, Macquarie, MIPIP and MIP (hereinafter referred to as collectively, "MIP") pursuant to a purchase agreement dated November 23, 2021, purchased 100% of the equity and stocks of Defendant, RailUSA, from its parent company and Defendant, American Rail Partners.

75. As a result of the aforementioned purchase agreement dated November 23, 2021, MIP resulted in control of Defendant Grenada.

76. Upon information and belief, Plaintiff charges and avers that the MIP answering Defendants expressly or impliedly agreed to assume the contingent and unliquidated liabilities of the predecessor Defendants, RailUSA and American Rail Partners.

77. Upon information and belief, Plaintiff charges and avers that the transaction between RailUSA, American Rail partners, and the MIP Defendants was a de facto merger.

78. Based upon the aforementioned assumption of liabilities and/or de facto merger, the

liabilities of RailUSA, American Rail Partners, and Grenada's liabilities are imputed to the MIP answering Defendants.

## VI.

## **INJURIES AND DAMAGES**

79. Plaintiff incorporates by reference the allegations contained in the above paragraphs as if set forth fully herein.

80. Plaintiff alleges that as a direct and proximate result of the herein-above-described violations of the Federal Employers' Liability Act and common law negligence by the answering Defendant, Plaintiff, Bryant Lenoir, sustained devastating and disabling injuries, including, but not limited to, broken teeth and broken bones in his jaw, permanent impairment, surgery, scarring and disfigurement, and temporary and permanent impairment.

81. Plaintiff alleges that as a direct and proximate result of the hereinabove described negligence of the answering Defendant, Plaintiff has sustained temporary and permanent disability.

82. Plaintiff alleges that he has endured pain and suffering and will continue to suffer from the injuries arising out of the subject wreck.

83. Plaintiff alleges that he has incurred reasonable and necessary medical expenses in order to alleviate his pain and suffering and verily believes that he will incur said expenses in the future.

84. Plaintiff alleges that as a direct and proximate result of the hereinabove described negligent acts of the answering Defendants Plaintiff sustained loss of earnings, past, present, and future.

85. Plaintiff further alleges that he has sustained a loss of quality and enjoyment of the

normal pleasures of life as a result of the subject incident, past, present, and future.

86.  Plaintiff alleges that he has sustained garden variety mental anguish as a result of the subject incident but has not sustained any type of permanent mental anguish.

## RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Bryant Lenoir, respectfully sues Defendants for a reasonable amount of restitution and compensation for damages to be determined by twelve Honorable and good citizens of the Northern District of Mississippi but not to exceed the sum of **TWO MILLION DOLLARS AND 00/100 ($2,000,000.00)**, together with post-judgment interest and his costs herein expended. Plaintiff, Bryant Lenoir, desires any other relief to which he may justly and properly be entitled**.**

    Respectfully submitted,

    **NAHON SAHAROVICH & TROTZ, PLLC**

    /s/ Adam H. Johnson
    Adam H. Johnson (MSB #103057)
    Attorney for the Plaintiff
    488 South Mendenhall Road
    Memphis, Tennessee 38117
    Phone: (901) 259-0435
    Email: ajohnson@nstlaw.com